Coddington agt. Dunham.

# N. Y. SUPERIOR COURT.

JAMES CODDINGTON and ISAAC CODDINGTON agt. JOHN B. DUN-
HAM and DAVID H. DUNHAM.

A covenant for *quiet enjoyment* in a lease relates only to the lessor's title,
and means that the lessee shall not be evicted by a paramount title, but
does not secure undisturbed enjoyment where there is no eviction from
the premises.

The question whether a failure to insure a supply of croton water amounts
to an *eviction* must depend upon the necessity of the supply for the pur-
poses of the tenement and the lessor's liability to keep it up, and that lia-
bility can exist only where the lessor has obligated himself so to do.
Where no such obligation exists in the lease, none can be implied.

Where the utmost of the lessor's obligation is shown to be only a *neglect to
repair*, it is well settled that he is not bound to repair except by express
agreement.

Where there is no obligation in the lease to keep up a supply of croton
water, it follows that a *counter-claim* for damages, which is based upon
such assumed obligation, must also fail.

*General Term, March,* 1873.
*Before* MONELL, *P. J.,* FREEDMAN *and* CURTIS, *JJ.*

THE complaint was for one quarter's rent of the second
floor and its appurtenances of No. 17 Union square, in the
city of New York, from 1st August to the 1st November,
1872, amounting to $875. The premises were leased to
defendants and Edgar A. Dunham, who died before the
commencement of this action, from the 1st May, 1870, to the
1st May, 1873, by one Nathan Clark, and the whole building
was by him subsequently leased to the plaintiffs by said Clark,
subject to the lease to these defendants and Edgar A. Dun-
ham, by which the plaintiffs assumed the obligations of said

lease and became entitled to the rent thereby reserved. A copy of the lease was annexed to the complaint and made a part thereof.

The answer expressly admitted the making of the lease of the second floor, as alleged in the complaint; also the death of Edgar A. Dunham and the lease of the building by Nathan Clark to the plaintiffs, as averred in the complaint. It also set up in bar of the rent an eviction from part of the demised premises by reason of plaintiffs' failure to keep up a supply of croton water, and finally contained a counter-claim to the extent of $300 for damages alleged to have been sustained in consequence of plaintiffs' failure, as aforesaid.

The plaintiffs demurred to the answer upon the ground that it constituted neither a defence nor a counter-claim to the claims of the plaintiffs in this action. The court at special term sustained the demurrer. The appeal is from the judgment entered upon the order of the special term.

TEN BROECK & VAN ORDEN, *for appellants.*
H. K. CODDINGTON, *for respondents.*

*By the Court,* FREEDMAN, *J.*—The lease in question demised the second floor of the building at the north-west corner of Union square and Fifteenth street, in the city of New York, with the appurtenances, which, however, are not described. It contains a covenant for quiet enjoyment, which relates only to the lessor's title, and means that the lessees shall not be evicted by a paramount title, but which does not secure undisturbed enjoyment where there is no eviction from the premises. It does not contain any warranty on the part of the lessors that the demised premises shall continue to remain in the same condition and state of repair that they were in at the time of the execution of the instrument. Nor does it contain an obligation on the part of the lessors to keep the premises in repair. On the part of the lessees, however, it contains a covenant that they will pay the regular annual rent

Coddington agt. Dunham.

or charge which is or may be assessed or imposed according to law upon the said premises for the croton water, on or before the first day of August in each year during the term, and that if not so paid the same shall be added to the quarter's rent then due. A copy of this lease is annexed to the complaint and forms part of the same, and defendant's answer expressly admits the execution of the lease as alleged in the complaint.

The defendants, however, further allege that among the appurtenances leased as aforesaid was a water closet and wash basin, and a continuous supply of croton water for the same; that the said water was supplied through pipes running through other portions of the building leased by plaintiffs to other parties, and that in consequence of the occurrence of a leak in the pipes outside of defendant's premises the water was shut off on the 8th day of July, 1872, of which plaintiffs were immediately notified; that afterward plaintiffs were requested to cause a supply of water to be furnished, but that plaintiffs neglected and refused to repair the said pipes or to furnish a supply of water; that defendants thereupon abandoned the said water closet and wash basin; that they have been evicted, and are still held evicted from the same; and that by reason of such eviction the rent is barred.

The answer finally sets up that defendants have suffered damages and inconvenience, and that in case the facts pleaded as an eviction should not be deemed sufficient in law to constitute an eviction, the defendants, upon the said facts, claim to recover as a counter-claim the sum of $300 damages for the breach of the agreement to furnish a supply of water as an appurtenance.

Upon examination we are satisfied that neither the defense pleaded nor the counter-claim can be upheld. The croton water is furnished by the corporation of the city of New York to applicants on payment of an annual tax or charge, and where neither the flow of water nor the pipes appertaining to the tenement through which it flows are interfered with by

the lessor, the question whether a failure to insure a supply of water amounts to an eviction must depend upon the necessity of the supply for the purposes of the tenement and the lessor's liability to keep it up; and that liability can exist only where the lessor has obligated himself so to do. No such obligation exists in this case, nor can any be implied.

The utmost the answer can be held to allege is a neglect on the part of the lessors to repair, and on this point the rule is well settled that a lessor is not bound to repair except by express agreement. Defendants had a right to enter the portion of the building outside of their own premises, where the leak occurred, and to repair the pipes (*Lampman* agt. *Milks*, 21 *N. Y.*, 508, *and cases there cited*), and it is not alleged that they were refused such right or in any way obstructed in the exercise thereof. Nor is it alleged that in consequence of the leak the water was shut off by the lessors. For all that appears, it may have been done by some other tenant without the knowledge and consent of the lessors. The answer, therefore, shows neither an interference by the lessors nor an obligation on their part to insure a continuous and uninterrupted supply of water, and consequently does not show facts sufficient to constitute an eviction.

In *Johnson* agt. *Oppenheim* (43 *How.*, 433), the adjudications of this State bearing upon the subject of interference by landlords with tenants were arranged into several classes, and the remedy peculiar to each class pointed out, but this case cannot be brought within any of the classes there referred to.

There being no obligation in the lease to keep up a supply of croton water, it further follows that the counter-claim, which is based upon such assumed obligation, must also fail; for even if otherwise good, it could be sustained as a counter-claim in this action only upon proof that it arose out of the contract or transaction set forth in the complaint, or that it is connected with the subject of the action (*Code*, § 150). The words "subject of the action," as there used, are equivalent to the facts constituting plaintiffs' cause of action (*Chamboret*

Coddington agt. Dunham.

agt. *Cagney*, 2 *Sweeny*, 378; *S. C.*, 41 *How.*, 125; 10 *Abb.* [*N. S.*], 31).

The judgment must be affirmed with costs, with leave to defendants to file and serve an amended answer in twenty days upon payment of all costs since commencement of action.

MONELL and CURTIS, *JJ.*, concurred.