## HAYS *v.* MOODY.

*(City Court of New York, General Term.* October 26, 1888.)

1. LANDLORD AND TENANT—LEASES—PRINCIPAL AND AGENT—ATTORNEY IN FACT.
   Where the owner's attorney in fact executes a lease in which he names himself as lessor, the words "attorney," etc., appended to his signature, are merely *descriptio personæ;* and, the tenant having held over after the expiration of the lease, the owner may maintain an action for the rent as the lessor's assignee.

2. SAME—HOLDING OVER—LIABILITY FOR RENT.
   Where the tenant, under a lease for one year, which provides for a renewal, holds over after its expiration, and pays rent for the succeeding month, an agreement to continue the lease for another year will be implied, though the tenant had refused to renew it.

3. SAME—ACTION FOR RENT—DEFECTS IN PREMISES.
   Where a lessee for one year renews his lease by holding over, and then abandons the premises, he is estopped to deny that the drainage was in good condition when he entered, as guarantied by the lease; nor is he released from payment of rent by Laws N. Y. 1860, c. 345, exempting lessees from liability where the premises become untenantable without their fault,—the defect having existed when the term for which rent is claimed commenced.

4. SALE—COVENANTS—WAIVER.
   Defendant cannot set up a counter-claim on the warranty in the lease, since all objections to the premises were waived by the holding over.

5. SAME—DUTY TO REPAIR.
   Where the lessee covenants to return the premises in good repair, he cannot require the lessor to make any repairs.

6. SAME—EVIDENCE—MAKING REPAIRS AFTER ABANDONMENT.
   In an action for rent, where defendant has abandoned the premises, alleging that they were untenantable because of defective drainage, evidence that plaintiff repaired the drainage after the vacation is incompetent; there being no question of negligence, and the evidence not establishing an accepted surrender.

7. APPEAL—REVIEW—DISCRETION OF TRIAL COURT.
   Under Code Civil Proc N. Y. § 1187, authorizing the submission of facts specially to the jury, such submission is within the discretion of the court, and not reviewable.

Appeal from trial term.

Action by Cornelia G. Hays against Horace Moody for rent due. Verdict directed for plaintiff, and from a judgment entered thereon defendant appeals. Laws N. Y. 1860, c. 345, referred to in the opinion, provides that the lessee of any building which shall, without fault on their part, become untenantable, shall not be liable for rent after such time.

Argued before NEHRBAS, McGOWN, and PITSHKE, JJ.

*Edward B. Hill,* for appellant.    *Carlisle Norwood, Jr.,* for respondent.

PITSHKE, J.   This action was for rent of a dwelling-house in Yonkers, for 11 months, commencing June 1, 1887, sued in 11 different counts; a lease under seal of the plaintiff's assignor and the defendant having first been made for one year from May 1, 1886, to May 1, 1887, under which the defendant went into possession; and he continuously remained in possession of the premises until some time in August, 1887, when he vacated possession. Defendant paid the accruing rent during said first year, and also that for May, 1887; and the suit was brought for the rent for the premises subsequent to the said month of May, 1887.   Defendant, on the contrary, denied he held over the occupancy after May 1, 1887, under a continuation of the former lease.   The defendant also put in a counter-claim, based on an alleged warranty that the plumbing and sewer connections of the premises were in good order; and averring he continued in possession relying thereon, and by the bad construction and condition of such plumbing and connections this defendant suffered loss and damage.   This counter-claim was controverted by the plaintiff.   A verdict was directed for plaintiff, under the defendant's exception, and an application for a new trial was denied by the court below.

The lessor in 1886, though only "attorney in fact" for the owner, (this plain-

tiff,) made the lease in form as a principal, and he was individually bound to the lessee by all the obligations of the sealed lease mentioned; the execution whereof, and defendant's entry into possession thereunder, are expressly admitted on the record. *Guyon* v. *Lewis*, 7 Wend. 26, 30; *Stone* v. *Wood*, 7 Cow. 453. Such lessor did not in that lease purport to demise as attorney for the owner, but the words "attorney," etc., are only *descriptio personæ*, and all the covenants of defendant therein were with and to John C. Hays, said lessor. The "attorney" was the contracting party with said lessee. The case, hence, did not bind the owner of said premises. *Kiersted* v. *Railroad Co.*, 69 N. Y. 343. Plaintiff, therefore, properly maintained this action as the lessor's assignee, on an alleged holding over and occupancy on defendant's part of the premises after the expiration of said original term, coupled with a payment of the rent for the next following month, (May, 1887;) and the letter of defendant in evidence admitted such occupancy as a "tenant" up to July 22, 1887, at least. Where a tenant so holds over after a preceding term, the law implies an agreement, between the owner and such holding-over occupant, to hold for another year upon the terms of the previous letting; and this will be so in the face of such tenant's refusal to renew the lease. *Schuyler* v. *Smith*, 51 N. Y. 309. The lease in evidence provided for a renewal thereof, and defendant's subsequent continuance in possession was under the owner as landlord by operation of law. There was no valid contradictory evidence. The question was one of law.

The fact that the premises were untenantable or unfit for occupation was, at common law, no defense to an action for the rent, where the lessee covenanted to pay rent, or was in possession as occupying tenant of the premises. Under the statute of 1860, (c. 345,) modifying this rule of law, it is a prerequisite that the tenant has abandoned the premises, and no longer holds them as occupant in any manner; and said statute applies only in case the building became untenantable from a cause not existing till after such tenant commenced his "term" of tenancy embracing the rent sued for. *Bloomer* v. *Merrill*, 1 Daly, 485. The guaranty in the preceding sealed lease, if any there was, related to the then state of the premises at the making of such preceding lease; and was, furthermore, not the plaintiff's guaranty, but that of John C. Hays individually. The alleged parol agreement, subsequent to the making of said lease for the first term, to have said premises again only conditionally upon an alteration of the drainage arrangements, was with the lessor's agent; and no authority in such agent to make any such agreement was shown on the trial so as to bind the present plaintiff. There was, besides, no relation of agent and principal between "Guerineau and Drake, and Cornelia G. Hays," plaintiff herein. The agents were to communicate with Mr. Hays, who was not the "owner," to make any disposition of the premises for the succeeding year. Notwithstanding that no changes were made in the sewer or drainage connections, the defendant stayed in the house as an occupying tenant, after May 1, 1887; and he cannot destroy now the characterization he thereby placed on the state and condition of the premises as regards their tenantableness, nor can he controvert the legal effect of such holding over, that the "owner" may elect to treat him as a "tenant" for a year, liable for the rent accordingly, instead of as a "trespasser." Not having been expelled from the premises, nor having abandoned the same, the tenant cannot insist on a constructive eviction, or claim damages against this plaintiff, neither with respect to the holding under the sealed lease, nor as regards the new term for another year under the "owner," created by operation of law. *Edwards* v *Candy*, 14 Hun, 596, 598. The supposed actual surrender was not accepted, and is insufficient. *Long* v. *Stafford*, 103 N. Y. 283, 8 N. E. Rep. 522. The landlord is no insurer of the "tenantableness" of the house demised. A tenant, taking premises either originally or on a renewal, must look and judge for himself. The rule is, *caveat emptor*. *Chappell* v. *Gregory*, 34 Beav. 253; *Erskine* v. *Ad-*

*eane*, 6 Moak, Eng. R. 594, 598; *Cleves* v. *Willoughby*, 7 Hill, 86; *Hart* v. *Windsor*, 12 Mees. & W. 68; *Keates* v. *Cadogan*, 10 C. B. 591; *Robertson* v. *Tug Co.*, 46 Law T. (N. S.) 146. The landlord is not impliedly bound to keep the demised dwelling-house in repair as let unto defendant, or to improve the same, but a direct covenant so to do it necessary to hold such landlord (either Mr. Hays, or, since the term of former lease, the plaintiff) to damages for any injurious consequences. *Witty* v. *Matthews*, 52 N. Y. 514; *Murray* v. *Mace*, 8 Ir. C. L. 400, 401; *Post* v. *Vetter*, 2 E. D. Smith, 248; *Mullen* v. *Rainear*, 45 N. J. Law, 520, 523; *Reg.* v. *Bucknall*, 2 Ld. Raym. 804; *Taylor* v. *Whitehead*, 2 Doug. 749; *Colebeck* v. *Girdlers Co.*, 1 Q. B. Div. 234. Says Lord MANSFIELD, in *Taylor* v. *Whitehead:* "The common law is, he who has the use of a thing ought to repair it." Mere omission to abate the objectionable state of things, though a nuisance, where tenant has the possession, is insufficient to render the landlord responsible to the tenant. *Wenzlick* v. *McCotter*, 87 N. Y. 127; *Howard* v. *Doo'ittle*, 3 Duer, 464, 474, 476. The plaintiff was not in any way liable to defendant for a bad state of drainage-pipes of the house in question. *Coddington* v. *Dunham*, 3 Jones & S. 412; *Loupe* v. *Wood*, 51 Cal. 586; *Ivay* v. *Hedges*, 9 Q. B. Div. 80; *Gott* v. *Gandy*, 2 El. & Bl. 847. "Fraud apart, there is no law against letting a tumble-down house; and the law of easements (given for value or otherwise) is, the grantee or holder of the easement had to repair the subject of the easement, with a right of entry so to do." *Robbins* v. *Jones*, 15 C. B. (N. S.) 240, 244. The tenant's remedy is therefore only on his contracts. Id. Lessor is never liable, (without an agreement,) though he have full notice of the need of repairs. *Brewster* v. *De Fremery*, 33 Cal. 341, 343, 347. A tenant cannot complain that the building was not constructed differently. *Woods* v. *Cotton Co.*, 134 Mass. 357. In conformity with the foregoing authorities, it was therefore properly held in *Chadwick* v. *Woodward*, 13 Abb. N C. 441, as follows: "The roof of the house may leak, flues may smoke, etc., and no claim for tenant's consequent ill health, or for sickness in his family, is ever thought of; but if a pipe becomes deranged or is defective, a different rule is claimed. Tenants hire with a knowledge of the sewer connections existing, and may examine them; and these are no more concealed than may be said of the inside brick-work and nearly every portion of a substantial house." "The party hiring can have as much knowledge as the lessor; the pipe fittings are no more open to the landlord then to the house-hunter." "Defects in plumbing are like defects in flues,—for which latter a liability never exists on landlord's part, (in the absence of binding covenant or agreement,) even if he be aware thereof." And on the appeal to the court of common pleas, in same case, (*Chadwick* v. *Woodward*, 12 Daly, 399,) it was further held that the damages claimed, for that tenant and his family were made ill by bad sewerage, besides injury to him thereby in alleged loss of business, were too remote on behalf of the occupying tenant for any recovery, even where the landlord has covenanted or agreed to repair. Also see Mayne, Dam. 26; *Middlekauff* v. *Smith*, 1 Md. 329, 343; *Dorwin* v. *Potter*, 5 Denio, 306, 308; *Academy* v. *Hackett*, 2 Hilt. 218; *Arnold* v. *Clark*, 13 Jones & S. 256, 257. The landlord being, as above remarked, no insurer of the tenantableness of the dwelling-house in question, wholly demised to and in the continuous possession of defendant, and the landlord being by the demise or afterwards under no obligation to repair, and by implication of law a new term for another year from May 1, 1887, having then arisen in favor of this plaintiff, (as then "owner" of the premises,) who never contracted or guarantied concerning the premises, the defendant was bound to actually leave and abandon the premises promptly, (*i. e.*, within a reasonable time after the occasion,) for "untenantableness," in order to make out a defense against further rent. This was, however, a case of a bad construction of the house as taken, and not one where the premises became untenantable after the letting by a subsequent cause. Under *Francke* v. *Youmans*, 17

Wkly. Dig. 252; *Cowie* v. *Goodwin,* 9 Car. & P. 378; *Thomas* v. *Nelson,* 69 N. Y. 121,—the act of 1860 did, therefore, not apply herein. Hence the tenant had the premises at his hazard, and therefore must pay all the rent. There was no undertaking on the landlord's part to repair.

The defendant's possession was expressly coupled with the requirement, in the lease under which he entered, to surrender by May 1, 1887, the premises in as good state and condition as they were in at the commencement of the term then ending, reasonable use and wear thereof and damages by the elements excepted. He could not, hence, call on the landlord to make any repairs. Ordinarily, when a landlord violates his covenant or express agreement to repair, the tenant can do so and charge the landlord with the cost, or he (such tenant) may also recover in a suit special damages from the loss of the "use" of that portion of the demise which the landlord's failure to make the agreed repairs prevented him from enjoying; but such tenant must do trifling repairs at once himself. *Myers* v. *Burns,* 35 N. Y. 273; *Cook* v. *Soule,* 56 N. Y. 420. As above already alluded to, the landlord, however, can never be made to answer, beyond that, for remote consequential damages. The exceptions taken below have, respectively, no merit.

It should be here added that it was immaterial whether repairs were, in fact, made, or defendant's complaints remedied, subsequent to his vacation of the premises. The voluntary making of such repairs, or remedying of the things complained of, would not be competent evidence to vary the legal relations of the parties, as established on the trial and above set forth. There was no question of negligence in the case. Negligence consists in the commission of some lawful act in a careless manner, or in the omission to perform some legal duty. *Nicholson* v. *Railroad Co.,* 41 N. Y. 529, 533. To make out a liability for defects resulted, or defective construction, on the ground of "negligence," there must be either a violation of "some contract," or of a duty, or the relation of "master and servant" must exist. *Mayor* v. *Cunliff,* 2 N. Y. 173; *King* v. *Railroad Co.,* 66 N. Y. 184, 185. Land-owners or landlords, as such, cannot be deemed negligent if guilty of mere "non-feasance" and no more. *Southcote* v. *Stanley,* 1 Hurl. & N. 246; and see *Terry* v. *Railroad Co.,* 22 Barb. 574. The proofs, as above already mentioned, did not establish any accepted surrender during the new term from May 1, 1887, to May 1, 1888, on May 1, 1887, arisen by "operation of law." *Long* v. *Stafford,* 103 N. Y. 274, 283, 8 N. E. Rep. 522. The tenant consequently continued liable for the whole rent of that last term. There was therefore nothing adduced requiring a submission of the case to the jury.

As regards the counter-claim as an alleged affirmative cause of cross-action in defendant's favor, it suffices to say that the "guaranty" in the original lease expressly related only to the then condition of the plumbing and sewer connection of the house at the delivery of said lease; and even that is immaterial herein, because such lease was not shown to be binding on Cornelia G. Hays, the "owner," of whom subsequently the defendant became a tenant for a new term simply by "operation of law, without any agreements." The old term, under the former lease, has been all paid up, thereby waiving any objection to the premises. The condition of the premises before May 1, 1887, is thus out of the case; and as to the new term, the "owner" (this plaintiff) never guarantied nor any way obligated herself with respect thereto. Apart from an express contract on plaintiff's part (absent herein) the counter-claim was not maintainable in this action as a cross-claim in tort; a tort cause, if existing against the landlord for eviction or constructive eviction, not being the subject of a counter-claim in a suit for rent. *Boreel* v. *Lawton,* 90 N. Y. 293, 297; *People* v. *Dennison,* 84 N. Y. 280. Consequently the counter-claim was not established, nor proper to go to the jury.

The defendant asked to go to the jury on several specified questions for determination, which was refused. This is no error of law, as the submission

of facts specially to the jury is a matter entirely within the discretion of the trial court.   Code Civil Proc. § 1187   The evidence so strongly preponderated in the plaintiff's favor that any verdict for defendant would be set aside, as undoubtedly against the weight of evidence and improper; and therefore it was the province of the court to direct a verdict for plaintiff herein.   This is the law in this state.   New York court of appeals, *Dwight* v. *Insurance Co.*, 8 N. E. Rep. 654.   The exceptions below, as to admission or rejection of evidence offered, demand no special consideration.   The verdict was properly directed for the plaintiff.   The judgment appealed from must therefore be affirmed, with costs.